**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

REBECCA NELSON,                          )
                                         )
                  Plaintiff,             )      2:19-cv-01382-RJC
                                         )
        vs.                              )      Judge Robert J. Colville
                                         )
STATE FARM FIRE & CASUALTY               )
COMPANY,                                 )
                                         )
                                         )
                  Defendant.             )

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss (ECF No. 6) filed by Defendant State Farm Fire

and Casualty Company ("State Farm").  State Farm's Motion seeks dismissal of Plaintiff's claims

for statutory bad faith (Count II), promissory estoppel (Count III), and negligent misrepresentation

(Count IV), and further seeks to strike several of the allegations and demands for damages set forth

in Plaintiff's Complaint (ECF No. 1).  This matter has been fully briefed and is ripe for disposition.

### I.      Factual Background & Procedural History

Plaintiff Rebecca Nelson ("Nelson") sets forth the following allegations in her Complaint

(ECF No. 1):

Nelson purchased a home ("the Property") in Pittsburgh, Pennsylvania in November 2015,

and obtained homeowner's insurance ("the Policy") for the Property through State Farm.  Compl.

¶¶ 11-12, ECF No. 1.  In December 2018, Nelson retained a contractor to repair what she believed

to be minor interior water damage near her kitchen window.  Compl. ¶ 16, ECF No. 1.  Nelson's

contractor advised her that the damage was more extensive than Nelson had originally believed,

and informed Nelson that the water damage was caused by damage to Nelson's roof which resulted

1

in water flowing into the Property's walls as opposed to the roof's gutters. *Id.* at ¶ 17. As a result, Nelson's kitchen, basement, and second-floor bedroom required water remediation. *Id.* at ¶ 21. Nelson obtained an estimate in the amount of $8,883.66 from ServiceMaster Restore by All Pro for the necessary water remediation. *Id.* at ¶ 22.

Upon the advice of her contractor, Nelson hired a public adjuster to submit an insurance claim to State Farm on Nelson's behalf in December 2018. Compl. ¶¶ 18-20, ECF No. 1. Nelson's public adjuster contacted a State Farm claims adjuster to discuss the estimate for water remediation, and, during this conversation, the claims adjuster approved the estimate and instructed Nelson to proceed with the water remediation. *Id.* at ¶ 23. Relying on this approval, Nelson then authorized ServiceMaster Restore by All Pro to conduct the water remediation, and ServiceMaster began work on the kitchen and second-floor bedroom. *Id.* at ¶¶ 24-26. In April 2019, State Farm sent a contractor to inspect Nelson's roof. *Id.* at ¶ 27. State Farm's contractor informed Nelson's public adjustor, who was present during the inspection, that the damage to the Property was covered under the terms of the Policy. Compl. ¶ 29, ECF No. 1. Sometime subsequent to this inspection, however, State Farm rescinded its former representations, denied Nelson's insurance claim for property damage, and refused to pay for the water remediation it had previously authorized. *Id.* at ¶¶ 30-31. As a result of this denial, Nelson cannot afford to complete the repairs to the Property. *Id.* at ¶ 34. Consequently, Nelson's kitchen has been rendered unusable since December 2018, the water remediation to the second-floor bedroom has not been completed, and her roof remains in its damaged state. *Id.* at ¶¶ 34-35.

On September 26, 2019, Nelson filed a Complaint against State Farm in the Court of Common Pleas of Allegheny County asserting claims for breach of contract (Count I), statutory bad faith pursuant to 42 Pa.C.S.A. § 8371 (Count II), promissory estoppel (Count III), negligent

misrepresentation (Count IV), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count V).  This action was removed to this Court on October 24, 2019.  Notice of Removal, ECF No. 1.  State Farm asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.  *Id*. at ¶ 10.  State Farm filed its Motion to Dismiss (ECF No. 6) and a Brief in Support (ECF No. 7) on October 29, 2019.  On November 20, 2019, Nelson filed a Memorandum of Law in Opposition (ECF No. 10).  State Farm filed a Reply (ECF No. 11) on November 26, 2019.

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

With respect to motions to strike, Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion."  *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) (citing *Snare & Triest v. Friedman*, 169 F. 1, 6 (3d Cir.1909); *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir.2007)).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  *Zaloga*, 671 F. Supp. 2d at 633 (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa.2002)).

## III.    Discussion

### A.  12(b)(6) Relief

State Farm's Motion seeks dismissal of Plaintiff's claims for statutory bad faith (Count II), promissory estoppel (Count III), and negligent misrepresentation (Count IV) pursuant to Fed. R. Civ. P. 12(b)(6).

#### 1.  Bad Faith Claim (Count II)

In its Motion to Dismiss, State Farm first argues that Nelson's statutory bad faith claim should be dismissed because Nelson's Complaint fails to set forth allegations sufficient to support a claim for bad faith under 42 Pa.C.S.A. § 8371.  Br. in Supp. 4, ECF No. 7.  State Farm argues that Nelson merely recites the elements of a claim for bad faith, and fails to set forth any specific allegations which, if taken as true, would entitle Nelson to relief.  *Id.*  State Farm further argues that Nelson's Complaint avers that State Farm eventually offered to pay for water remediation once Nelson retained an attorney, and that Nelson cannot recover for bad faith if State Farm offered to pay for the insurance claim at issue.  Reply Br. 2, ECF No. 11 (citing Compl. ¶ 33).  State Farm

also argues that the third-party roofing inspector who allegedly informed Nelson that the damage to the roof was covered under the policy cannot bind State Farm.  Reply Br. 2, ECF No. 7.

In response, Nelson argues that she has pled sufficient facts to state a claim for bad faith that is plausible on its face.  Specifically, Nelson asserts that the following facts alleged in her Complaint support a finding of bad faith pursuant to 42 Pa.C.S.A. § 8371:

> a) In December 2018, in a conversation [between] State Farm and plaintiff's public adjuster, State Farm authorized [Plaintiff] to begin water remediation;
>
> b) In April 2019, a State Farm contractor inspected her roof and stated to plaintiff's public adjuster that the damage was covered under the terms of the policy; yet
>
> c) State Farm refused to pay the claim.

Mem. in Opp'n 4, ECF No. 10.

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the Court may award the relief set forth in 42 Pa.C.S.A. § 8371. In addressing the elements of a statutory bad faith claim, the Supreme Court of Pennsylvania has explained:

> In order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis.  Additionally, we hold that proof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371, as argued by Appellant.  While such evidence is probative of the second *Terletsky* prong, we hold that evidence of the insurer's knowledge or recklessness as to its lack of a reasonable basis in denying policy benefits is sufficient.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017).

Nelson's Complaint avers that the damage to the Property is covered under the terms of the Policy, and that State Farm denied her claim for insurance benefits with respect to this damage. Compl. ¶¶ 30-31; 43, ECF No. 1.  Nelson further alleges that two State Farm representatives, a

State Farm claims adjuster and a contractor[1] sent by State Farm to inspect the Property, determined that the damage at issue was covered under the Policy and informed Nelson of the same. Compl. ¶¶ 23; 29; 48, ECF No. 1. These facts sufficiently assert that State Farm was without a reasonable basis in denying Nelson's insurance claim. Importantly, Nelson alleges that two State Farm representatives, upon reviewing Nelson's insurance claim and/or observing the Property, determined that the damage at issue was covered under the Policy. *Id*. These facts, if true, support a finding that State Farm knew or recklessly disregarded that it lacked a reasonable basis to deny Nelson's insurance claim, i.e. that State Farm knew, through its representatives, that the damage at issue was covered under the Policy but still chose to deny benefits. Further, the allegation that State Farm eventually offered to pay for only water remediation, and not the entirety of Nelson's claim, after Nelson had retained an attorney and had potentially suffered additional damages, does not defeat Nelson's claim for statutory bad faith, which asserts that State Farm had no reasonable basis to deny Nelson's entire insurance claim. For these reasons, Nelson's Complaint sufficiently sets forth a claim for bad faith.

### 2. Promissory Estoppel Claim (Count III)

State Farm also asserts that Nelson's claim asserting promissory estoppel (Count III) should be dismissed because there is a valid contract between Nelson and State Farm. Br. in Supp. 11, ECF No. 7. State Farm argues that claims for breach of contract and promissory estoppel may be pled in the alternative only where the validity of the contract is disputed. *Id*. Nelson argues

---

[1] While the Court acknowledges State Farm's argument that the roofing inspector to which Nelson refers in her Complaint is a third-party contractor who cannot bind State Farm, the Court, in deciding a motion to dismiss, reviews a plaintiff's complaint and "accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). State Farm may ultimately be correct in its assertion, but the Court cannot make a finding as to this issue at this time.

that, because State Farm contends that it is not in breach of the insurance contract, Nelson may plead a claim for promissory estoppel in the alternative.  Mem. in Opp'n 6, ECF No. 10.

"Courts have held that breach of contract and promissory estoppel may be pleaded in the alternative, but that if the court finds that a contract exists, the promissory estoppel claim must fall."  *Iversen Baking Co. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa. 1995) (citing *Carlson v. Arnot–Ogden Mem. Hosp.*, 918 F.2d 411, 416 (3d Cir.1990); *Atlantic Paper Box Co. v. Whitman's Chocolates*, 844 F. Supp. 1038, 1043 (E.D. Pa.1994); *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa.1991)).  *See also Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) ("In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted.").

Nelson has pled the existence of a valid, enforceable insurance contract between State Farm and Nelson, and seeks relief pursuant to that contract.  Compl. ¶ 41, ECF No. 1.  State Farm concedes the existence of this valid and enforceable contract.  Reply Br. 3, ECF No. 11 ("Here, there is a valid insurance contract and it is attached to State Farm's Motion to Dismiss.").  Should the validity or enforceability of the contract eventually be disputed for any reason, Nelson may seek leave to amend her Complaint to replead a promissory estoppel claim.  In light of State Farm's concession regarding the existence of a valid and enforceable insurance contract, however, the Court finds that Nelson's claim for promissory estoppel fails to state a claim upon which relief can granted.

### 3.  Negligent Misrepresentation Claim (Count IV)

State Farm also asserts that Nelson's claim for negligent misrepresentation should be dismissed under the gist of the action doctrine.  Br. in Supp. 8, ECF No. 7.  To sufficiently set forth a claim for negligent misrepresentation, a plaintiff must allege "(1) a misrepresentation of a

material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects & Engineers, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005)).

State Farm avers that any representation made by a State Farm claims adjuster that Nelson's claim was approved, and that Nelson should begin the process of water remediation, arises directly out of the insurance contract between the parties. Br. in Supp. 10, ECF No. 7. State Farm further argues that Nelson's alleged damages flow from a breach of contract as opposed to a broader social duty owed to all individuals. *Id.* at 10-11. State Farm asserts that Nelson is merely recasting her breach of contract claim as a tort claim for negligent misrepresentation, and that the same is not permissible under the gist of the action doctrine. *Id.* at 8.

Nelson argues that a party to a contract may also be found liable in tort where that party's performance under the contract is negligent and causes harm to another party. Mem. in Opp'n 5, ECF No. 10. Nelson further argues that State Farm breached a broader social duty owed to all individuals in authorizing Nelson to commence the water remediation in this action, and that Nelson has suffered harm as a result. *Id.* Nelson also argues that she should be permitted to pursue her negligent misrepresentation claim in the alternative. *Id.* at 6. Nelson asserts that State Farm represented that the damage at issue was covered under the Policy and instructed her to begin water remediation, and that, even if this Court were to find that such work was not covered under the Policy, then Nelson is entitled to seek relief for the damages caused by State Farm's misrepresentation. *Id.*

Both parties cite to the Supreme Court of Pennsylvania's decision in *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014) in support of their respective arguments regarding the gist of the action doctrine.  In *Bruno*, a family obtained a homeowners' insurance policy from defendant Erie Insurance Company.  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 51 (Pa. 2014).[2]  This policy required, inter alia, that Erie Insurance Company pay up to $5,000 to the Brunos if their home sustained a direct physical loss from mold.  *Bruno*, 106 A.3d at 70.  Plaintiff husband eventually discovered mold while performing renovations on his home, and promptly contacted Erie Insurance Company. *Id.* at 51.  Erie sent an adjuster and an engineer to inspect the mold, and both ultimately advised Mr. Bruno that the mold was harmless and that he should continue with the renovations.  *Id.* at 51-52.  Based on these representations, the Brunos remained in the home and Mr. Bruno continued with renovations, eventually discovering more of the same type of mold.  *Bruno*, 106 A.3d at 52. After again reporting the mold to Erie Insurance Company, the same engineer inspected the new areas of mold and ran tests on the mold, but did not disclose the results of the tests to the Brunos. *Id*.

Each of the plaintiffs in *Bruno* eventually developed respiratory ailments, and the Brunos subsequently decided to have the mold tested at their own expense.  *Bruno*, 106 A.3d at 52.  The testing revealed the mold to be toxic and dangerous to human health, and Erie Insurance Company eventually provided the $5,000 policy limit to the Brunos.  *Id*.  In their 12-count complaint, the Brunos asserted a claim for negligence against Erie Insurance Company.  The Brunos' negligence claim was supported by the following facts:

> [T]he Brunos asserted in their complaint that Erie's agents, while conducting the claim investigation, were negligent for: rendering unfounded advice to the Brunos that the mold was "harmless," denying the potential for adverse human health

---

[2] In *Bruno*, the Supreme Court of Pennsylvania reviewed the trial court's pretrial grant of a demurrer, and all factual averments set forth in the *Bruno* plaintiffs' complaint were thus accepted as true for purposes of the Pennsylvania Supreme Court's review.  *Bruno*, 106 A.3d at 70.

consequences posed by the Brunos' exposure to the mold; and telling them that they "should continue tearing out the existing paneling." The Brunos further aver that, because of this advice and recommendation, they proceeded with the removal of the basement paneling, which later led to them suffering health problems from the mold exposure, and their entire house being rendered uninhabitable such that it had to be destroyed.

*Bruno*, 106 A.3d at 70–71 (citation omitted). The *Bruno* trial court sustained Erie Insurance Company's demurrer to the Brunos' negligence claim on the basis that it was barred by the gist of the action doctrine. *Id.* at 54. The Superior Court of Pennsylvania affirmed the dismissal of this claim on appeal. *Id.*

With respect to the gist of the action doctrine, the Supreme Court of Pennsylvania in *Bruno* explained:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. . . . Although this duty-based demarcation was first recognized by our Court over a century and a half ago, it remains sound, as evidenced by the fact that it is currently employed by the high Courts of the majority of our sister jurisdictions to differentiate between tort and contract actions. We, therefore, reaffirm its applicability as the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint.
> Notably, and of relevance to the case at bar, our prior decisions in *Zell* and *Krum* underscore that the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract. Indeed, our Court has long recognized that a party to a contract may

be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party. . . .

Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2014) (footnotes omitted) (citations omitted).

In ultimately finding that the Brunos' negligence claim was not barred by the gist of the action doctrine, Supreme Court of Pennsylvania held:

Accordingly, while Erie had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by mold, the substance of the Brunos' allegations is not that it failed to meet these obligations; rather, it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort.

*Bruno*, 106 A.3d at 71.

In light of the above, the nature of the duty alleged to have been breached in this action is essential in determining whether Nelson's negligent misrepresentation claim is barred by the gist of the action doctrine. Pursuant to the Policy, State Farm provided insurance coverage to Nelson in exchange for the payment of money. Compl. ¶ 6, ECF No. 1. State Farm's duty to provide insurance coverage clearly arises from the terms of the Policy. State Farm may be obligated, under the terms of the policy, to provide coverage with respect to the damage set forth in Nelson's insurance claim. These issues will be determinative in the ultimate resolution of Nelson's breach of contract claim.

12

Nelson has also alleged, however, that a State Farm claims adjuster incorrectly informed Nelson that her insurance claim had been approved, and has further alleged that the claims adjuster instructed Nelson to begin water remediation pursuant to Nelson's claim.  Compl. ¶¶ 23-24; 56, ECF No. 1.  State Farm argues that:

> The issue presented is simple: is there coverage for water remediation under the policy.  Even if Plaintiff's allegation is taken as true that State Farm represented that there was, and then recanted (which is denied), this does not implicate a broader social duty.  It implicates a question of whether there is coverage under the insurance contract.

Reply Br. 2-3, ECF No. 11.

Under the terms of the Policy, State Farm is required to provide insurance benefits to Nelson for certain covered losses.  It stands to reason then, that the Policy also requires State Farm to review insurance claims submitted by Nelson and to subsequently grant or deny those claims following review.[3]  In her Complaint, Nelson alleges that a State Farm claims adjuster approved the estimate Nelson had obtained for water remediation and instructed Nelson to proceed with the water remediation, and that Nelson, relying on the claims adjuster's representation and advice, commenced such repair work.  Compl. ¶¶ 23-24, ECF No. 1.  While the Court appreciates that State Farm's duty to approve or deny insurance claims arises from the Policy, it is also apparent that State Farm did not view the alleged representation by the claims adjuster to be an official and/or final approval of Nelson's claim,  as demonstrated by State Farm's subsequent denial of Nelson's claim.  Compl. ¶ 30, ECF No. 1.  As such, Nelson alleges that State Farm, through its employee, misrepresented the status of Nelson's insurance claim.

---

[3] The Court notes that while the Policy, attached as Exhibit A to State Farm's Motion to Dismiss, is explicit with respect to the insured's responsibilities in the event of a loss, it is notably silent with regard to the manner in which State Farm may approve or deny a claim.  Mot. to Dismiss Ex. A, ECF No. 6.

Nelson's allegations respecting the misrepresentation made and advice rendered by the State Farm claims adjuster do not necessarily implicate State Farm's contractual duty to review and render a decision on insurance claims.  Rather, these allegations seem to implicate the general societal duty not to affirmatively mislead or advise without a factual basis.  *See Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 429 (Pa. Super. 2016) (addressing a claim for fraudulent misrepresentation, but explaining that the claim at issue in that case implicated the "societal duty not to affirmatively mislead or advise without factual basis." (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 58 (Pa. 2014))).  An affirmative assertion by a State Farm employee that Nelson's insurance claim had been approved certainly implicates the question of whether coverage is available under the Policy.  Once such an assertion has been made and is subsequently entirely disregarded and/or disavowed by State Farm, however, the inquiry necessarily involves investigation into whether the claims adjuster at issue misrepresented that Nelson's claim had been approved when that claims adjuster should have known that a final decision had not yet been made as to the claim.  The Court notes that Nelson also alleges that the claims adjuster at issue instructed Nelson to begin water remediation work on the Property, and that Nelson allegedly undertook such repairs.  When viewed in a light most favorable to Nelson, these facts tend to establish State Farm's intent to induce Nelson to act on the misrepresentation, resulting in injury to Nelson.

Nelson alleges that a State Farm claims adjuster represented that Nelson's insurance claim had been approved and instructed Nelson to begin costly repairs before a final decision on Nelson's insurance claim had been made.  When viewed in a light most favorable to Nelson, these allegations can be viewed as an assertion that State Farm negligently performed its contractual obligations, as opposed to an assertion that it violated its duties under the Policy.  Nelson's negligent misrepresentation claim does not, necessarily, require a determination as to whether

coverage was available for water remediation under the Policy, but rather whether Nelson was induced to take action, to her detriment, by a false representation made by State Farm.

At this preliminary stage of the proceedings, however, the Court is without information as to the amount of involvement and knowledge that the claims adjuster at issue had with respect to Nelson's insurance claim, and whether this particular individual could approve insurance claims over the phone or was permitted under the Policy to instruct an insured to conduct repairs before final approval of a claim. If the alleged phone conversation could have constituted approval of Nelson's claims, then Nelson's claim would sound in contract, as State Farm's failure to pay benefits following final approval would, presumably, be in breach of the Policy. Without such information, the Court cannot determine whether State Farm's duty arises out of the Policy, or rather out of a general societal duty to not affirmatively mislead or advise without a factual basis. The United States District Court for the Middle District of Pennsylvania has explained:

> A certain tension exists, at the motion to dismiss stage, between Pennsylvania's "gist of the action" doctrine and Rules 8(d)(2) and (3) of the Federal Rules of Civil Procedure, which expressly condone pleading in the alternative. District courts in Pennsylvania have noted that caution should be exercised in determining the "gist of an action" at the motion to dismiss stage.

*Odgers v. Progressive N. Ins. Co.*, 112 F. Supp. 3d 286, 292 (M.D. Pa. 2015). In light of the above observations, the Court will deny State Farm's Motion to Dismiss Nelson's negligent misrepresentation claim (Count IV) without prejudice. This issue may be revisited following discovery in this matter, if warranted.

### B.  12(f) Relief

State Farm's Motion also seeks to strike allegations and demands for damages set forth in Nelson's Complaint. State Farm first asserts that all allegations which refer to State Farm's slogan and advertisements should be stricken from Nelson's Complaint. State Farm also seeks to strike

Nelson's demand for recovery of the insurance benefits allegedly owed under the Policy in Nelson's claims asserting bad faith (Count II) and violation of the UTPCPL (Count V), and further seeks to strike Nelson's demand for damages for personal injuries, wage loss, emotional distress, and hedonic damages

### 1. Allegations Regarding State Farm's Advertisements

State Farm asserts that all allegations in Nelson's Complaint which refer to State Farm's slogan and advertisements should be stricken as impertinent because: 1) State Farm's slogan is vague and constitutes puffery, and thus cannot be reasonably relied upon as an express warranty or statement of fact; 2) the Policy includes an integration clause which supersedes any promises made by State Farm's advertisements; and 3) State Farm's advertisements cannot be the basis of Nelson's UTPCPL claims. Br. in Supp. 11-14, ECF No. 7. State Farm argues that its advertising expenditures are irrelevant to the ultimate issue of whether there is insurance coverage and whether State Farm handled Nelson's claim properly. Reply Br. 4, ECF No. 11. Nelson asserts that allegations respecting State Farm's advertising campaign demonstrate motive to deny claims in bad faith, specifically that State Farm expends so much money in advertising that it is then motivated to deny insurance claims in order to save money. Mem. in Opp'n. 6, ECF No. 10. Nelson further asserts that her assertions respecting State Farm's advertising are relevant to both Nelson's bad faith and UTPCPL claims. *Id.*

With respect to motions to strike, Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion." *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) (citing *Snare & Triest v. Friedman*, 169 F. 1, 6 (3d

Cir.1909); *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Zaloga*, 671 F. Supp. 2d at 633 (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa.2002)).

Black's Law Dictionary defines impertinent matter in a pleading as "an assertion or allegation that is not relevant to the action or defense." *Impertinent Matter*, BLACK'S LAW DICTIONARY (11th ed. 2019).  In *Brucker v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-00084, 2017 WL 7732876 (W.D. Pa. May 26, 2017), the Honorable Arthur J. Schwab, when considering the same advertisements at issue in this case but in the context of a breach of express warranty claim, granted a motion to dismiss the breach of express warranty claim "related to State Farm's advertising slogan 'like a good neighbor, State Farm is there,'" on the basis that "this advertising slogan is a marketing tool that consists of puffery, and cannot form the basis for a valid breach of express warranty claim." *Brucker v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-00084, 2017 WL 7732876, at *4 (W.D. Pa. May 26, 2017).  In doing so, Judge Schwab also denied the defendant's motion to strike, which, as in this case, sought to strike all averments related to State Farm's slogan, holding that "[a]lthough not a valid claim for relief, the Court will not strike the references to the slogan in the Amended Complaint." *Brucker*, 2017 WL 7732876, at *4 n.1.

State Farm has not moved to dismiss Nelson's UTPCPL claim at this juncture.  Further, as discussed above, Nelson's bad faith claim will not be dismissed at this point in the litigation.  In *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017), the Supreme Court of Pennsylvania explained:

> [P]roof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371, as argued by Appellant.  While such evidence is probative of the second *Terletsky* prong, we

hold that evidence of the insurer's knowledge or recklessness as to its lack of a reasonable basis in denying policy benefits is sufficient.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017).   While the Court acknowledges State Farm's concern respecting the ultimate scope of this litigation, the Court does not find at this time that the allegations at issue are irrelevant to the degree that this Court should grant State Farm's requested relief that every reference to State Farm's advertisement and slogan be stricken from Nelson's Complaint.   On that basis alone, and without addressing the viability of Nelson's claims which rely on these allegations at this juncture, the Court will deny State Farm's request to strike averments regarding State Farm's advertisements and slogan.

### 2.  Requests for Damages

State Farm further seeks to strike Nelson's requests for recovery of the insurance benefits allegedly owed under the Policy in Nelson's claims asserting bad faith (Count II) and violation of the UTPCPL (Count V).   State Farm argues that these requests for damages are redundant and would allow for double recovery because Nelson seeks the same damages by way of her breach of contract claim (Count I).   Br. in Supp. 15-16, ECF No. 7.   State Farm further argues that neither 42 Pa.C.S.A. § 8371 nor the UTPCPL provide for the recovery of such damages.   *Id*.   Nelson argues that 42 Pa.C.S.A. § 8371 does not prohibit the recovery of compensatory damages, and further argues that the UTPCPL allows for the recovery of "actual damages," which includes compensatory damages.   Mem. in Opp'n 7, ECF No. 10.

Section 8371 provides:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:"

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

18

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

While the Court agrees with Nelson's assertion that compensatory damages are not prohibited by Section 8371, the Supreme Court of Pennsylvania, in *Birth Ctr. v. St. Paul Companies, Inc.*, 787 A.2d 376 (Pa. 2001), explained:

> [I]f the trial court did not charge the jury on breach of contract, The Birth Center could only recover compensatory damages from St. Paul if some other theory provided a basis for recovery. As we discuss in this opinion, neither 42 Pa.C.S.A. § 8371 nor any other relevant cause of action provide a basis for recovery. Thus, Birth Center's compensatory damage award depends on whether The Birth Center asserted a contract cause of action and whether the trial court charged the jury regarding that claim.

*Birth Ctr. v. St. Paul Companies, Inc.*, 787 A.2d 376, 382 (Pa. 2001). *See also Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 236 (3d Cir. 2003) ("[T]he majority opinion and Justice Nigro's concurring opinion in *Birth Center* make clear that section 8371 does not supply the exclusive cause for action for suing an insurer for breach of the duty to act in good faith and make clear that an insurer's bad faith refusal to settle a claim can give rise to a contract cause of action."); *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 411 (W.D. Pa. 2011) ("A plaintiff, therefore, may '*supplement* the breach of contract damages that they can obtain through their bad faith contract action by also bringing a claim under § 8371 for the specific damages authorized in that statute.'" (quoting *Birth Ctr. v. St. Paul Companies, Inc.*, 787 A.2d 376, 391 (Pa. 2001) (Nigro, J., concurring))).

Nelson seeks payment of the benefits allegedly owed under the policy by way of both her breach of contract claim and her statutory bad faith claim. While Nelson may bring both causes of action, Nelson's demand to recover benefits under the statutory bad faith claim is redundant and

impermissible.  Pursuant to the caselaw discussed above, Nelson may seek compensatory damages by way of her breach of contract claim, and the specific damages authorized in 42 Pa.C.S.A. § 8371 by way of her statutory bad faith claim.  Accordingly, the Court will grant State Farm's Motion to Strike Nelson's request that State Farm "be ordered to pay the value of the damage to Plaintiff's home as provided for in its Policy."

With respect to damages under the UTPCPL, the Superior Court of Pennsylvania has explained:

> In order to recover damages under the UTPCPL, a plaintiff must demonstrate an ascertainable loss as a result of the defendant's prohibited action.  The trier of fact must examine the entire factual circumstances of a case to determine whether the plaintiff has succeeded in demonstrating an ascertainable loss.  If so, the fact-finder may award actual damages.  Though no precise definition of actual damages currently prevails, it is clear that a successful plaintiff is entitled to the benefit of her bargain.  Therefore, the fact-finder must consider the precise benefit expected.  It is also clear that there must remain certain flexibility in calculating actual damages, as they are dependent upon the evidence accepted and found persuasive by a fact-finder.

*Dibish v. Ameriprise Fin., Inc.*, 134 A.3d 1079, 1089 (Pa. Super. 2016) (citations omitted).

With respect to State Farm's Motion to Strike Nelson's UTPCPL damages request, the Court is without sufficient information at this time, especially given the highly factual nature of UTPCPL damages evaluation, to determine what constitutes Nelson's "actual damages," the extent of the same, or whether these damages will necessarily prove redundant with respect to Nelson's breach of contract claim.  To the extent that these damages overlap with the relief requested by way of Nelson's breach of contract claim, the same may be revisited at a later date.  At this time, however, the Court will deny State Farm's Motion to Strike Nelson's UTPCPL damages request.

Finally, State Farm also seeks to strike "[Nelson's] demands for damages for (1) personal injuries, (2) wage loss, (3) emotional distress, and (4) hedonic damages" on the basis that such damages are not recoverable under Nelson's causes of action.  Br. in Supp. 17, ECF No. 7.

Initially, the Court notes that State Farm's argument is seemingly premised on the assumption that this Court would dismiss Nelson's negligent misrepresentation claim (Count IV), as State Farm raises no argument with respect to the recoverability of such damages with respect to that claim. For that reason, this Court will not dismiss these demands for damages at this time. The Court further notes, with respect to Nelson's request for these damages in her breach of contract claim, that this Court is without a sufficient factual or evidentiary record to determine whether such damages were reasonably foreseeable at the time of contract formation.[4]

To the extent State Farm's Motion requests that Nelson be ordered to more clearly set forth the damages she seeks under each claim, the Court denies State Farm's Motion. Nelson's Complaint is sufficiently clear as to what damages are sought under each claim. For these reasons, this Court will deny State Farm's Motion to Strike Nelson's demands for damages for personal injuries, wage loss, emotional distress, and hedonic damages.

## IV.    Conclusion

For the reasons discussed above, this Court will grant in part and deny in part State Farm's Motion to Dismiss, consistent with this Memorandum Opinion. An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Court Judge

DATED: June 3, 2020

cc/ecf: All counsel of record

---

[4] State Farm essentially concedes the same in recognizing that the authority on which it relies involved a motion for summary judgment as opposed to a motion to dismiss or preliminary objections. *See* Br. in Supp. 18, ECF No. 7 ("Of course, it should be noted that the court [in *Crumm v. K. Murphy & Co.*, 10 Pa. D. & C. 5th 268 (C.P., Lawrence Cty. Sept. 16, 2009)] was making a ruling on a Motion for Partial Summary Judgment, which carries with it a standard of review aided by a factual record.").