**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

REBECCA NELSON,          )
                                              )
        Plaintiff,          )
                                              )     2:19- cv-01382-RJC
     vs.                    )
                                              )
STATE FARM FIRE & CASUALTY     )
COMPANY,                      )     Judge Robert J. Colville
                                              )
        Defendant.         )

<u>**MEMORANDUM OPINION**</u>

Robert J. Colville, United States District Judge

Before the Court is the Motion for Summary Judgment (ECF No. 54) filed by Defendant State Farm Fire and Casualty Company ("State Farm"). State Farm seeks judgment in its favor with respect to the remaining claims (Counts I, II, IV, and V) set forth against it in the Complaint (ECF No. 1-7) filed against State Farm by Plaintiff Rebecca Nelson. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). State Farm's Motion has been fully briefed and is ripe for disposition.

## I.    Factual Background & Procedural History

Unless otherwise noted, the following facts are not in dispute:

Plaintiff currently resides, and at all relevant times resided, at 186 Chartiers Avenue, Pittsburgh, PA 15205 (the "Property"). Resp. to Concise Statement ("Resp.") ¶ 1, ECF No. 65. At all relevant times, Plaintiff maintained a policy of homeowners insurance that had been issued to her by State Farm at Policy No. 38CVN4033 (the "Policy"), which provided coverage for accidental and direct physical loss to the Property, subject to the Policy's terms, limitations, conditions, and exclusions. *Id.* at ¶ 3. With respect to "Losses Insured," the Policy provides:

**COVERAGE A – DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

ECF No. 57-1 at 17.  With respect to "Losses Not Insured," the Policy provides:

**SECTION I – LOSSES NOT INSURED**

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . . .

g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

. . . .

i.  wet or dry rot;

. . . .

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

. . . .

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure[] for such loss regardless of: (a) the cause of the excluded event;  or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a
result of any combination of these:

. . . .

d. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

. . . .

g. Fungus. We also do not cover:

> (1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;

> (2) any remediation of fungus, including the cost to:

>> (a) remove the fungus from covered property or to repair, restore or replace that property; or

>> (b) tear out and replace any part of the building or other property as needed to gain access to the fungus; or

> (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

. . . .

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. And 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

. . . .

b. defect, weakness, inadequacy, fault or unsoundness in:

> . . . .

> (2) design, specifications, workmanship, construction, grading, compaction;

> (3) material used in construction or repair; or

> (4) maintenance;
> of any property (including land, structures, or improvements of any kind) whether on or off the residence premises[.]

. . . .

> However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

Resp. ¶ 5, ECF No. 65; ECF No. 57-1 at 19-21.  The Policy also provides: "Suit Against Us.  No action shall be brought unless there has been compliance with the policy provisions.  The action must be started within one year after the date of loss or damage."  *Id.* at ¶ 6.

On April 3, 2018, Plaintiff noticed damage to her kitchen wall and contacted her father to ask him for a contractor referral.  Resp. ¶ 9, ECF No. 65.  Despite this request, Plaintiff did not repair the damage to her kitchen wall in April of 2018.  *Id.* at ¶ 10.  Plaintiff contacted a contractor about having the damage repaired again in September, October, and November of 2018, but did not repair the damage during these months.  *Id.* at ¶¶ 11-12.  In November of 2018, Plaintiff noticed additional damage to her kitchen wall.  *Id.* at ¶ 13.  In December of 2018, Plaintiff hired a contractor, Scopewell, to install a tarp on her roof.  *Id.* at ¶ 14.  The parties dispute whether Plaintiff had informed State Farm of the damage to the Property prior to the installation of the tarp.  *Id.*  Scopewell told Plaintiff that a gutter had pulled away from her roof above the guest room window, resulting in water channeling into the flashing around both windows, which in turn saturated the drywall from the inside out.  *Id.* at ¶ 15.[1]  Plaintiff did not personally convey Scopewell's statement to State Farm.  *Id.* at ¶ 16.

On December 17, 2018, Plaintiff retained a public adjuster, Brian Pfister, to communicate with State Farm on her behalf regarding the loss.  Resp. ¶ 17, ECF No. 65.  Plaintiff did not directly communicate with State Far about the loss, and all communications were conveyed by Mr. Pfister to State Farm.  *Id.* at ¶ 18.  As a result of the loss, Plaintiff required water remediation, including the removal of any rotting and deteriorated drywall.  *Id.* at ¶¶ 19-20.  State Farm was first notified

---

[1] *But see* Resp. ¶ 15, ECF No. 65 (Plaintiff stating that "[i]t is admitted only that Scopewell made this statement[,]" but averring that: "It is denied that this is the cause of plaintiff's loss.  Plaintiff's loss that was caused by a wind event that pushed the drip edge of her roof.").

of Plaintiff's loss by Mr. Pfister on December 20, 2018. *Id.* at ¶¶ 21-22. At that time, Plaintiff had not chosen a company to perform the required remediation. *Id.* at ¶ 26.

On December 21, 2018, Plaintiff retained water remediation company, ServiceMaster Restore by All Pro ("ServiceMaster"), who inspected the Property and loss at issue that day. Resp. ¶¶ 28-29, ECF No. 65. On December 22, 2018, ServiceMaster, who had concluded that a mechanical failure or defect in the overhang of the roof of the Property caused the loss, provided Plaintiff with an estimate of $8,883.66 for the water remediation, and Plaintiff subsequently authorized ServiceMaster to perform the water remediation. *Id.* at ¶¶ 30-33. During its work on the Property, ServiceMaster located areas of drywall around the kitchen window that had eroded severally to the point that these areas had no remaining structural integrity. *Id.* at ¶ 35. ServiceMaster found mold and deterioration throughout the affected areas of the kitchen, and also found mold in Plaintiff's upstairs bedroom. *Id.* at ¶¶ 36-37. Plaintiff does not dispute ServiceMaster's findings, and Plaintiff herself observed mold on or near the wooden supports that were visible following the removal of the damaged drywall. *Id.* at ¶¶ 38-39. Mr. Pfister spoke with a representative of State Farm on December 27, 2018 and advised the representative that he had been informed by Alex Barraza of State Farm on December 20, 2018 that State Farm would pay for the water remediation work. *Id.* at ¶¶ 40-43. State Farm asserts that there is no indication in the initial Loss Report or the earlier File History notes that indicate water remediation work had been approved or that State Farm had promised to pay for same, and Plaintiff disputes this assertion. *Id.* at ¶ 44.

On either December 27, 2018 or January 2, 2019, State Farm employee Chad Moore was assigned Plaintiff's claim and was further assigned to inspect the Property. Resp. ¶ 45, ECF No. 65. ServiceMaster completed its water remediation work on January 7, 2019. *Id.* at ¶ 46. With

Mr. Pfister present, Mr. Moore inspected the Property on January 9, 2019.  *Id.* at ¶ 47.  State Farm avers that, during Mr. Moore's inspection, he made the following observations: (1) that water appeared to have entered into the rear exterior wall of the Property from the roof or upper elevation, allowing water to seep down through the framing; (2) that the water infiltration had caused deterioration and rot to the third-floor bedroom wall and the second-floor kitchen wall and subfloor; and (3) that a tarp had been installed on Plaintiff's roof.  *Id.* at ¶¶ 48-50.[2]  The parties do not agree as to whether Mr. Pfister and Mr. Moore, at the time of Mr. Moore's inspection, knew of the source of the water infiltration and the basis for the tarp's placement on Plaintiff's roof.  *Id.* at ¶¶ 51-52.  The parties also do not agree as to whether Mr. Pfister had already provided information to State Farm on December 20, 2018 regarding the source of the water infiltration and the basis for the tarp installation, or whether Mr. Pfister agreed to provide further information to Mr. Moore regarding these issues following Mr. Moore's inspection, with Plaintiff asserting the former and State Farm the latter.  *Id*.

On January 19, 2019, State Farm sent a status update letter to Plaintiff which: (1) advised Plaintiff that State Farm had identified a date of loss of April 3, 2018 with respect to Plaintiff's claim; (2) quoted the suit limitation provision of the Policy (providing that a lawsuit must be commenced within one year of the date of loss or damage); and (3) informed Plaintiff that her claim remained pending due to the coverage investigation and that "[State Farm] need[ed] any information regarding the source of water and the reason for the tarp on the roof."  Resp. ¶¶ 53-55, ECF No. 65.  The parties vehemently dispute the "date of loss" at issue, with Plaintiff asserting that the same was a date in December of 2018, mostly based upon her knowledge and belief of the

---

[2] With respect to these averments, Plaintiff asserts: "Plaintiff is without knowledge of what Mr. Moore observed[,]" and that these Paragraphs "constitute inadmissible hearsay and plaintiff objects to the same."  Resp. ¶¶ 48-50, ECF No. 65.

extent of the damage at issue prior to that date, and State Farm asserting that the date of loss was April 3, 2018, the date Plaintiff noticed damage to her kitchen wall and contacted her father to ask for a contractor referral. *Id.* Plaintiff has also advanced argument that, "even if the date of loss were [determined] to be April 3, 2018, . . . Defendant's own conduct precludes it enforcing the same." *Id.* at ¶ 76.

On January 29, 2019, Mr. Pfister informed State Farm that Scopewell was the contractor that had installed the tarp on Plaintiff's roof. Resp. ¶ 59, ECF No. 65. On February 1, 2019 and February 12, 2019, Mr. Moore attempted to contact Scopewell via telephone to discuss the roof tarping and whether Scopewell had completed an inspection of the Property's roof, but did not receive an answer and instead left voicemails requesting a callback. *Id.* at ¶¶ 60-61. Scopewell returned Mr. Moore's calls on February 27, 2019, and indicated that it had not performed a roof inspection, but had rather simply installed the tarp. *Id.* at ¶ 62. That same day, State Farm Team Manager David Konefal-Shaer extended authority to engage a roofer to inspect the roof. *Id.* at ¶ 63. On February 28, 2019, Mr. Moore contacted Mr. Pfister to advise that an inspection of the roof would be performed by Insurance Restoration Consultants ("IRC"), but Mr. Pfister refused to allow IRC on the property. *Id.* at ¶¶ 64-65. Accordingly, Mr. Moore contacted Restoration Management Services ("RMS") to conduct an inspection of the roof. *Id.* at ¶ 66. On March 1, 2019, State Farm sent another status update letter to Plaintiff again identifying a date of loss of April 3, 2018 with respect to Plaintiff's claim and quoting the suit limitation provision of the Policy. *Id.* at ¶¶ 67-69.

Jathan D'Antonio of RMS conducted an inspection of the Property on March 11, 20219, with Mr. Pfister present. Resp. ¶ 69, ECF No. 65. Mr. D'Antonio, presumably in a report sent to State Farm via email on March 15, 2019, *see id.*, concluded that "the drip edge on the roof without

an overhand was not in the gutter, but was on the rear elevation of the structure above the affected areas of the home, and that water was able to run off the drip edge, down the rear elevation, and penetrate onto the sheathing on the rear elevation,"[3] and opined that "over time this water intrusion has caused damage to the interior and exterior of the home[,]" *id.* at ¶¶ 70-71.[4]  On March 29, 2019, Mr. Moore sent a copy of Mr. D'Antonio's inspection report to Mr. Pfister in addition to a letter outlining State Farm's determination that the loss was not covered by the Policy and denying Plaintiff's claim.  *Id.* at ¶ 73.  On April 11, 2019, Mr. Moore closed Plaintiff's claim after receiving no further communications from Mr. Pfister.  *Id.* at ¶ 74.

On April 16, 2019, State Farm received a letter of representation and demand from Plaintiff's counsel, noting that "it is my intention to commence litigation within ten (10) days if State Farm does not provide coverage for this loss."  Resp. ¶ 75, ECF No. 65.  On May 15, 2019, State Farm sent a letter to Plaintiff's counsel indicating that State Farm stood by its denial of coverage conveyed in its March 29, 2019 letter, but offering to pay the costs of ServiceMaster's water remediation work ($8,883.66) as a compromise.[5]  *Id.* at ¶¶ 77-78.  Plaintiff rejected State Farm's May 15, 2019 offer, and initiated this action via a Praecipe for Writ of Summons on May 22, 2019.  *Id.* at ¶¶ 79-80.  Other than ServiceMaster's water remediation work and Scopewell's installation of the tarp, Plaintiff has not obtained any estimates for the repair of the Property to its pre-loss condition.  *Id.* at ¶ 81; *see also* Pl.'s Ex. 2 at 93-94.  Due to State Farm's denial of coverage, Mr. Pfister never prepared an estimate for the repair of the Property.  *Id.* at ¶ 82.

---

[3] This information is more clearly conveyed in State Farm's Brief in Support, wherein State Farm asserts that "water was not properly channeling into the rear gutter, but rather was running off the drip edge, down the rear elevation, and into the sheathing/exterior wall."  Br. in Supp. 3-4, ECF No. 55.

[4] Plaintiff admits these Paragraphs, and further avers that "Mr. Pfister stated the damage was caused by wind."  Resp. ¶¶ 70-71, ECF No. 65.

[5] State Farm also reserved its right to reserve its policy defenses by way of this letter.  ECF No. 57-19.

On June 3, 2020, this Court issued a Memorandum Opinion (ECF No. 13) and Order (ECF No. 14) granting in part and denying in part the Motion to Dismiss (ECF No. 6) filed by State Farm.  Following this decision, the following claims remain at issue in this matter: (1) Count I, breach of contract; (2) Count II, statutory bad faith; (3) Count IV, negligent misrepresentation; and (4) Count V, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

State Farm filed its Motion for Summary Judgment, along with a Brief in Support (ECF No. 55), a Concise Statement of Material Facts (ECF No. 56), and an Appendix of Exhibits (ECF No. 57), on October 11, 2021.  On November 23, 2022, Plaintiff filed a Brief in Opposition (ECF No. 66), a Response to State Farm's Concise Statement (ECF No. 65), and an Appendix of Exhibits (ECF No. 64).  State Farm filed a Reply (ECF No. 68) and a Supplemental Appendix of Exhibits (ECF No. 69) on December 7, 2022, and Plaintiff filed a Surreply (ECF No. 73) on December 20, 2021.  Plaintiff filed a Motion (ECF No. 74) setting forth additional legal authority on February 8, 2023 and requesting the Court consider the same in ruling on State Farm's Motion for Summary Judgment, and State Farm filed a response (ECF No. 75) to the same on February 14, 2023.  Because the Court considered the legal authority raised in Plaintiff's Motion, the Motion at ECF No. 74 will be granted.

## II.     Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted.  Fed. R. Civ. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

## III.    Discussion

State Farm advances several arguments in support of its Motion for Summary Judgment. State Farm first argues that Plaintiff's breach of contract claim is time-barred by the Policy's one-year suit limitation provision, relying on its assertion that the date of loss with respect to Plaintiff's insurance claim was April 3, 2018. Br. in Supp. 5, ECF No. 55. State Farm further asserts that, even if not time-barred, Plaintiff's breach of contract claim fails because State Farm made its coverage decision pursuant to valid policy exclusions. *Id.* at 7. State Farm argues that Plaintiff's claim for bad faith should be dismissed because Plaintiff has failed to produce clear and convincing evidence from which a jury could reasonably conclude that State Farm did not have a reasonable basis for denying benefits under the policy and that State Farm knew of or recklessly disregarded

its lack of a reasonable basis. *Id.* at 10.  State Farm further argues that Plaintiff has produced no evidence to support a claim of negligent misrepresentation, and, more specifically, that she has put forth no evidence that State Farm ever represented that her property damages claim had been accepted. *Id.* at 14.  State Farm argues that, even if this representation had been made, Plaintiff has failed to adduce evidence of causation or damages. *Id.* at 16.  Finally, State Farm argues that "Plaintiff has failed to put forth any evidence that the representations and conduct she alleges in her pleadings are likely to deceive a consumer acting reasonably under similar circumstance and, relatedly, has failed to show in any respect that her reliance on such alleged representations and conduct in purchasing the Policy was justifiable." *Id.* at 18.

Plaintiff argues that State Farm's Motion for Summary Judgment should be denied because she has established the existence of genuine issues of material fact with respect to each of her claims.  Plaintiff argues that she has produced evidence of a covered claim that State Farm denied in bad faith, and more specifically that "State Farm was aware it had no basis to deny the claim and, in complete disregard for the rights of its insured, unjustifiably delayed its investigation in an attempt to foreclose Ms. Nelson's rights to judicial relief." Br. in Opp'n 1, ECF No. 66.  Plaintiff relies nearly exclusively on an Affidavit (ECF No. 64-1) submitted by Mr. Pfister in opposing summary judgment.  In particular, Plaintiff appears to rely solely on the affidavit of Mr. Pfister in arguing that there exists a genuine dispute of material fact regarding the source of Plaintiff's water damage, with Mr. Pfister asserting that the same was caused by a wind event. *Id.* at 7.  State Farm objects to Plaintiff's reliance on Mr. Pfister's Affidavit on the basis that an expert witness may not be compensated through a contingency fee, and further argues that Mr. Pfister is not qualified to offer an opinion on the causation of the water damage to the property in any event.  Reply 1, ECF No. 68.

With respect to interpretation of an insurance policy, the Supreme Court of Pennsylvania has explained:

> Our primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms.  [*401 Fourth Street v. Investors Insurance Co.*, 879 A.2d 166, 170 (Pa. 2005)].  "When the language of the policy is clear and unambiguous, [we must] give effect to that language."  *Id*.  Alternatively, when a provision in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."  *Id*.

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).

### A.  Plaintiff's Breach of Contract Claim is Time-Barred

"Pennsylvania law recognizes as valid suit limitation clauses in insurance policies."  *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. 2009).  "This is not a statute of limitation imposed by law; it is a contractual undertaking between the parties and the limitation on the time for bringing suit is imposed by the parties to the contract."  *Gen. State Auth. v. Planet Ins. Co.*, 346 A.2d 265, 267 (Pa. 1975) (quoting *Lardas v. Underwriters Ins. Co.,* 231 A.2d 740, 741–42 (Pa. 1967)).  A policy's suit limitation period runs from the date of the occurrence of the destructive event or casualty insured against.  *Id*.

A suit limitation clause can be subject to the defenses of waiver and estoppel.  *Prime Medica*, 970 A.2d at 1156-57 (Pa. Super. 2009).  However, these exceptions only apply where the insurer is responsible for the delay.  *See Planet Ins.*, 346 A.2d 265 (Pa. 1975); *see also Prime Medica*, 970 A.2d at 1155 ("Insurer acknowledges the suit limitation clause can be tolled where an insurer induces an insured to forbear bringing suit within the prescribed period.").  With respect to waiver, the Superior Court of Pennsylvania has explained:

Waiver is the voluntary and intentional abandonment or relinquishment of a known right. *Samuel J. Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Associates Ltd. Partnership*, 416 Pa.Super. 45, 610 A.2d 499 (1992). "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Id.* at 501.

*Prime Medica*, 970 A.2d at 1156–57. It has explained as follows with respect to estoppel:

A suit limitation clause is also subject to the defense of estoppel. [*Petraglia v. American Motorists Ins. Co.*, 424 A.2d 1360 (1981), *affirmed by*, 498 Pa. 32, 444 A.2d 653 (1982)]

Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.

*Kreutzer v. Monterey County Herald Co.*, 560 Pa. 600, 606, 747 A.2d 358, 361 (2000) (quoting *Novelty Knitting Mills v. Siskind*, 500 Pa. 432, 435, 457 A.2d 502, 503 (1983)). The party asserting estoppel bears the burden of establishing estoppel by clear, precise and unequivocal evidence. *Farmers Trust Co. v. Bomberger*, 362 Pa.Super. 92, 523 A.2d 790 (1987). "[M]ere silence or inaction is not a ground for estoppel unless there is a duty to speak or act." *Id.* at 793 (quoting *Brown v. Haight*, 435 Pa. 12, 19, 255 A.2d 508, 512 (1969)).

*Id.* at 1157. "The insured must present evidence establishing 'reasonable grounds for believing that the time limit would be extended' or that the insurer would not strictly enforce the suit limitation provision." *Id.* (quoting *Petraglia*, 424 A.2d 1360).

In the present case, the Policy contains a valid suit limitation clause providing that suit must be commenced within one year of the date of loss or damage. The Court agrees with State Farm that the date of loss in this case was April 3, 2018, i.e., the date Plaintiff noticed that she had sustained water damage to her kitchen. In Mr. Pfister's December 17, 2018 contract with Plaintiff, Mr. Pfister and Plaintiff each identified not only April 3, 2018 as the date Plaintiff sustained damages caused by water, but a specific time (7:10 p.m.) on that date that Plaintiff sustained water

13

damage.  *See* ECF No. 69-1 at 1 ("WHEREAS, the Insured/Claimant sustained damages on the 3rd day of April 2018, 7:10 which were caused by, and/or were the result of water and which occurred at the following location: Loss Address: 186 Chartiers Ave Crafton, PA 15205"). Further, Mr. Pfister reported April 3, 2018 as the date of loss to State Farm in December of 2018. *See* ECF No. 57-3 at 15:6–12; 35:10–13; ECF No. 57-4.[6]  The Court cannot disregard what is tantamount to an admission by Plaintiff and her public adjuster that the date of loss in this case was April 3, 2018, and that each was aware of this date as the relevant date of loss at the time they entered into a contract with one another and submitted a claim to State Farm.  Accordingly, Plaintiff had one year from April 3, 2018 to commence a lawsuit against State Farm, even though Plaintiff now argues that she did not notice water damage until December of 2018.  Plaintiff commenced her lawsuit on May 22, 2019, seven weeks after the expiration of the suit limitation period.  Unless Plaintiff can establish that the suit limitation clause should not be enforced, Plaintiff's breach of contract claim is time-barred.

The Court notes that Plaintiff's reliance on *Lapensohn v. Lexington Ins. Co.*, No. 2:12-CV-01132-JCJ, 2012 WL 3029655 (E.D. Pa. July 24, 2012) for its application of the discovery rule in the context of suit limitation clauses is misplaced.  The undisputed facts in this case show that Plaintiff first noticed water damage to her kitchen on April 3, 2018.  Again, Plaintiff's public adjuster identified not only this date, but a specific time (7:10 p.m.), in his contract with Plaintiff as the date Plaintiff sustained damages caused by water.  This is notable not only because it is a document signed by both Plaintiff and Mr. Pfister acknowledging the date of loss to be April 3, 2018, but also because the document was signed at a time prior to the expiration of the one-year

---

[6] The Court also notes that State Farm's Exhibits respecting the work done by ServiceMaster (ECF Nos. 57-8; 57-9; 57-10; and 57-11) indicate that the water damage occurred on April 20, 2018 and further indicate a "date of loss" of April 20, 2018.  Plaintiff's lawsuit was also filed more than one year after this date.  Two of these documents (ECF Nos. 57-9 and 57-11) are signed by Plaintiff.

suit limitation period.  Plaintiff acknowledged the date of loss to be April 3, 2018, and, on December 17, 2018, still had months in which to file a lawsuit.  The Court finds that the discovery rule does not impact the suit limitation period in this case.

Further, any assertion that State Farm waived the suit limitation provision or should be estopped from asserting the same is belied by the record in this matter.  State Farm sent several letters to Plaintiff identifying a date of loss of April 3, 2018, indicating that State Farm had not determined whether her claim was covered at that point, and further quoting the Policy's suit limitation provision.  *See* ECF No. 57-12 (January 19, 2019 letter); ECF No. 57-14 (March 1, 2019 letter).  Clearly, State Farm in no way conveyed a voluntary and intentional abandonment or relinquishment of the suit limitation provision.  *See Prime Medica*, 970 A.2d at 1158 ("Insurer sent Insured four separate letters within the limitations period, referencing in each letter the importance and all the requirements of the limitations provision in the policy.  Insured failed to request any relief from or extension of the limitations period.  In the absence of evidence constituting Insurer's waiver, the suit limitations clause prevails.").

Similarly, the Court finds that Plaintiff has not come forward with sufficient evidence that could establish that Plaintiff had reasonable grounds for believing that the time limit for filing suit would be extended or that State Farm would not strictly enforce the suit limitation provision.  *See Prime Medica*, 970 A.2d at 1158 ("Furthermore, Insured failed to demonstrate that Insurer should be estopped from asserting the suit limitations provision.  The record does not indicate Insurer misled Insured about the possibility of settlement or induced Insured in any manner to refrain from commencing suit.  The mere declaration that Insurer was investigating the claim is insufficient to prove Insured was induced to forbear from commencing suit. . . .  Likewise, Insurer's letter to Insured denying coverage specified Insurer's reasons for the decision, in addition to the general

terms, exclusions and limitations of the policy.  Therefore, Insurer gave no formal or informal promise implied by its words, deeds or representations which led Insured to justifiable reliance or forbearance to its own injury or detriment.   Thus, we conclude Insured's failure to commence suit within the policy limitations period barred its claim against Insurer." (citations omitted)).   State Farm essentially warned Plaintiff, via two letters during its claim investigation, that State Farm had determined the date of loss to be April 3, 2018, and further reminded Plaintiff that any lawsuit with respect to the claim was required to be commenced within the one-year suit limitation period. Again, Plaintiff and her public adjuster, on December 17, 2018, each signed an agreement acknowledging that the date Plaintiff sustained water damage was April 3, 2018.  Mr. Pfister reported April 3, 2018 as the date of loss to State Farm.  While the Court acknowledges that State Farm did not deny Plaintiff's claim until March 29, 2019, that too was within the limitation period, and she still, at that time, could have filed suit without running afoul of the limitation period. Instead, she waited seven weeks before commencing her suit.  It bears noting that the denial letter again references a date of loss of April 3, 2018 and quotes the Policy's suit limitation provision.

The Court finds that Plaintiff cannot establish waiver or estoppel, and thus finds that Plaintiff's breach of contract claim is time-barred.  State Farm's Motion for Summary Judgment will be granted as to Plaintiff's breach of contract claim.

### B.  Merits of Plaintiff's Breach of Contract Claim and Mr. Pfister's Affidavit

State Farm further argues that Plaintiff's breach of contract claim fails because State Farm denied coverage under the Policy pursuant to valid policy exclusions.  It also argues that Mr. Pfister's contingency fee agreement with Plaintiff renders Mr. Pfister's testimony inadmissible, and that Plaintiff has, accordingly, failed to produce any evidence to contradict State Farm's determination of the cause of the water damage at issue.  State Farm argues in the alternative that

Mr. Pfister is not qualified to offer the expert opinions contained in his Affidavit, and that the same should be disregarded as inadmissible to the extent it offers such opinions.

Because the Court has found Plaintiff's breach of contract claim to be time-barred, it need not, and will not, resolve State Farm's assertions respecting the merits of this claim or Plaintiff's reliance on Mr. Pfister's Affidavit to support that claim. The Court merely acknowledges that these arguments have been advanced, and further notes that neither Plaintiff nor State Farm provide this Court with binding precedent as to the admissibility of Mr. Pfister's Affidavit and testimony.

### C. Plaintiff's Bad Faith Claim

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the Court may award the relief set forth in 42 Pa.C.S.A. § 8371. In addressing the elements of a statutory bad faith claim, the Supreme Court of Pennsylvania has explained:

> In order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis. Additionally, we hold that proof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371, as argued by Appellant. While such evidence is probative of the second *Terletsky* prong, we hold that evidence of the insurer's knowledge or recklessness as to its lack of a reasonable basis in denying policy benefits is sufficient.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017); *see also Mann v. UNUM Life Ins. Co. of Am.*, No. CIV.A. 02-1346, 2003 WL 22917545, at *6 (E.D. Pa. Nov. 25, 2003) ("mere negligence or bad judgment is not bad faith." (quoting *Polselli v. Nationwide Mutual Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994)). "Bad faith conduct also includes 'lack of good faith investigation into fact[s], and failure to communicate with the claimant.'" *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004). "The fact that plaintiff's burden at trial is higher

than preponderance of the evidence means that plaintiff's burden in opposing summary judgment is higher as well." *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 (E.D. Pa.), *aff'd*, 172 F.3d 860 (3d Cir. 1998) (citing *Anderson*, 477 U.S. at 254). "The clear and convincing evidence standard is the highest standard of proof for civil claims[,]" and "requires evidence so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy of the truth of the precise facts in issue." *In re Est. of Cella*, 12 A.3d 374, 380 (Pa. Super. 2010) (citations omitted). Although the Court cannot weigh the evidence in ruling on a motion for summary judgment, the Court must "consider whether plaintiff has come forward with sufficient facts to meet her substantive evidentiary burden—in this case, clear and convincing—at trial." *Quaciari*, 998 F. Supp. at 581.

Courts have held that "an insurance company's substantial and thorough investigation of an insurance claim, forming the basis of a company's refusal to make or continue making benefit payments, establishes a reasonable basis that defeats a bad faith claim." *Mann*, 2003 WL 22917545, at *6. Further:

> To defeat a bad faith claim, the insurance company need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.

*Id.* at *7.

Plaintiff has not come forward with evidence that would permit a jury to find, by clear and convincing evidence, that State Farm lacked a reasonable basis for denying Plaintiff's claim and that State Farm recklessly disregarded its unreasonableness. Initially, the Court notes that Plaintiff herself argues that the policy exclusions at issue are ambiguous and reasonably susceptible to more than one interpretation, and Mr. Pfister has acknowledged that a portion of Plaintiff's claim, albeit

an assertedly small portion, was not covered by the Policy. *See* Pfister Aff., ECF No. 64-1 at ¶ 51 ("I am aware that some issues of wet rot were identified in some wooden studs placed around the kitchen window in Ms. Nelson's home. If these studs were indeed affected by wet rot, then State Farm would not have been responsible for replacing them under the terms of the Policy."); Br. in Opp'n 11, ECF No. 66 ("To the extent wet rot existed, Mr. Pfister agreed that a few studs did show signs of wet rot and should properly be excluded from Ms. Nelson's claim."). The same tends to indicate that State Farm had a reasonable basis for denying at least some claimed benefits under the policy.

In opposing summary judgment on her bad faith claim, Plaintiff focuses entirely on State Farm's investigation of her claim. The record is bereft of evidence sufficent to allow a jury to conclude that State Farm's investigation involved bad faith. State Farm first learned of the loss on December 20, 2018, and thereafter communicated with Mr. Pfister in an effort to investigate whether the claim was covered. State Farm conducted an inspection on January 9, 2019. The Court agrees with State Farm that, despite Mr. Pfister's assertions to the contrary, the record is clear that State Farm was not provided with a definitive statement from Mr. Pfister as to the source of the water infiltration or the placement of the tarp prior to State Farm sending its January 19, 2019 letter explaining that it needed to conduct further investigation into these issues.[7] Thereafter, a delay of several weeks resulted from State Farm's inability to reach Scopewell to inquire as to whether Scopewell had conducted a formal roof inspection. After finally reaching Scopewell and learning that no such inspection had occurred, State Farm immediately hired a roofer to conduct an inspection. State Farm provided the report from this inspection, along with its denial letter, to Plaintiff on March 29, 2019. While Plaintiff makes much of the fact that the timing of this letter

---

[7] The Court also finds any assertion that State Farm failed to comply with 31 Pa. Code § 146.6 to be meritless.

left her little time to commence suit, the Court again notes that the entire investigation was completed, and Plaintiff's claim was denied, over a period of only a little more than three months, and importantly, in advance of the expiration of limitation period.  The Court concludes that Plaintiff has failed to adduce any evidence that the delays in this case were unreasonable.  *See Dagit v. Allstate Prop. & Cas. Ins. Co.*, No. CV 16-3843, 2017 WL 2473164, at *6 (E.D. Pa. June 8, 2017) ("Although plaintiffs question why the investigation took over four and a half months to complete, plaintiffs fail to meet their burden of establishing that such a delay was unreasonable, that it was solely attributable to Allstate or that Allstate had no reasonable basis for causing any such delay.  Indeed, '[t]he only evidence before the court indicates legitimate, if frustrating, delays that are an ordinary part of legal and insurance work.'  [*Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 582, 590 (E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000)].  Where 'delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred.' *Id*.").

In summary, State Farm conducted a thorough investigation before ultimately determining that Plaintiff's claim was not covered under the Policy.  While Plaintiff disagrees with that determination, she fails, even when considering the evidence in a light most favorable to her, to point to evidence by which a jury could conclude, by clear and convincing evidence, that State Farm lacked a reasonable basis for denying Plaintiff's claim and that State Farm recklessly disregarded its unreasonableness.  Accordingly, State Farm is entitled to summary judgment on Plaintiff's bad faith claim, and the Court will grant State Farm's Motion as to that claim.

### D.  Plaintiff's Negligent Misrepresentation Claim

To sufficiently set forth a claim for negligent misrepresentation, a plaintiff must allege "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter

ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects & Engineers, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005)).

State Farm correctly notes that Plaintiff's Brief in Opposition to State Farm's Motion for Summary Judgment fails to oppose or even acknowledge State Farm's request for summary judgment as to Plaintiff's negligent misrepresentation claim.  Reply 13, ECF No. 68.  Further, Plaintiff's Surreply dedicates a single, conclusory substantive paragraph to her claim for negligent misrepresentation, and fails in any material respect to address the evidence of record that supports her claim.

"It is not the district court's obligation to comb the record to make arguments for a party." *Wright v. Dallas Sch. Dist.*, No. 3:05-CV-1197, 2007 WL 9775650, at *7 (M.D. Pa. July 5, 2007), *aff'd sub nom. Wright v. The Dallas Sch. Dist.*, 286 F. App'x 775 (3d Cir. 2008); *see also Jankowski v. Sage Corp.*, Civil Action No. 08-770, 2010 WL 1253544, at *9 (W.D. Pa. Feb. 23, 2010), *report and recommendation adopted*, Civil Action No. 08-770, 2010 WL 1253542 (W.D. Pa. Mar. 24, 2010) (finding, where a "[p]laintiff did not respond to [d]efendant's arguments in her Opposition to [d]efendant's Motion or otherwise discuss (let alone mention) her gender discrimination claim, much less raise any issues of fact as to why the claim should not be dismissed on summary judgment[,]" that the gender discrimination claim should be "considered abandoned" and that "the Court need not reach the merits of [that] claim." (citing cases)).  "To overcome a motion for summary judgment, it is the plaintiff's burden of presenting specific facts, with specific reference to the record." *Wright*, 2007 WL 9775650, at *7.  Plaintiff fails to do so, and the Court

finds that, while her claim for negligent misrepresentation may have been sufficient to survive a motion to dismiss, she has come well short of her burden in opposing summary judgment. The Court finds that Plaintiff has abandoned her claim for negligent misrepresentation, and the Court will thus grant State Farm's Motion for Summary Judgment with respect to Plaintiff's claim for negligent misrepresentation.

### E. Plaintiff's UTPCPL Claim

Plaintiff's UTPCPL claim relies on assertions that her insurance agent informed her that, if Plaintiff were to ever have a claim, that State Farm "would take great care of her," Compl. ¶ 14, ECF No. 1-7, and on State Farm's advertising jingle, "like a good neighbor, State Farm is there," *id.* at 1-2. "To establish a violation of the UTPCPL, a plaintiff must show that defendant engaged in a deceptive act or practice, that plaintiff justifiably relied on defendant's deceptive conduct, and that plaintiff's justifiable reliance caused plaintiff an ascertainable harm." *Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 332 (W.D. Pa. 2020) (citing *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 465, 470 (E.D. Pa. 2009)).

Under Pennsylvania law, an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty. 13 Pa.C.S.A. § 2313(b). "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Brucker v. State Farm Mut. Auto. Ins. Co.*, No. 17-CV-00084, 2017 WL 7732876, at *3 (W.D. Pa. May 26, 2017) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)).

State Farm's slogan is unactionable puffery, and any reliance on this slogan on Plaintiff's part is unjustifiable. *See Brucker*, 2017 WL 7732876, at *3 ("State Farm's motto is neither specific nor measurable by research, as it relies on a subjective opinion about the goods provided. Nor

does it create a necessary comparison to their competitors that is testable.  Any survey performed to define what a 'good' neighbor is based on opinions rather than testable facts as in *Castrol*, or holding oneself out as an 'expert.'"); *Sicherman v. Nationwide Life Ins. Co.*, No. CIV.A. 11-7227, 2012 WL 1122737, at *4 (E.D. Pa. Apr. 4, 2012) ("To the extent that the complaint can be construed as claiming that Nationwide's advertising slogan that 'Nationwide is on your side' is deceptive under the statute, this claim fails as a matter of law.  Even if such a representation was made extraneous to and for the purpose of inducing the plaintiff to enter the policy contract, private UTPCPL plaintiffs must allege that they have justifiably relied on an alleged deceptive practice to state a claim.   Even if the plaintiff could claim that her husband relied on this statement in entering the policy contract, such reliance would not be justifiable because this statement is puffery." (citations omitted)).

The Court further finds that any statement made by Plaintiff's insurance agent that State Farm would "take great care of her" is far too general and vague to constitute a deceptive statement upon which Plaintiff could justifiably rely.  *See Power v. Erie Fam. Life Ins. Co.*, 392 F. Supp. 3d 587, 592 (E.D. Pa. 2019), *aff'd*, 813 F. App'x 751 (3d Cir. 2020) ("Power claims that he asked Erie's agent to contact him 'in case anything was to happen' to the policy and the agent in turn promised that 'nothing would happen to the policy without [him] being notified.'  Such a promise, if one was made by Erie's agent is broad and vague, and is too indefinite to be enforced." (citation omitted)).  In short, Plaintiff has produced no evidence that would support a finding that State Farm engaged in a deceptive act or practice in selling Plaintiff the Policy, or that Plaintiff could have justifiably relied on any such statement.  State Farm's Motion will be granted as to Plaintiff's UTPCPL claim.

**IV.     Conclusion**

For the reasons discussed above, the Court will grant State Farm's Motion for Summary

Judgment as to each of Plaintiff's claims.  An appropriate Order of Court follows.

BY THE COURT:


*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 28, 2023

cc: All counsel of record